UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DARLEANA JOHNSON, et al., | |
| Plaintiffs, | |
| v. | Case No. 3:22-CV-608 JD |
| HOUSING AUTHORITY OF SOUTH BEND, et al., | |
| Defendants. | |

**OPINION AND ORDER**

Darleana Johnson filed this action on behalf of herself and her children after she was evicted from her house on Solomon Avenue, which she rented from the Housing Authority of South Bend ("HASB"). In 2021, Ms. Johnson began informing HASB that the Solomon Ave. house had mold, that it was affecting her and her children's health, and that the house was uninhabitable. HASB offered Ms. Johnson two alternative housing options, but Ms. Johnson did not want to relocate because the alternatives did not possess the convenience, social opportunities, and cultural richness of the Solomon Ave. house. After a state court hearing in which Ms. Johnson was not allowed to present evidence or argument about any federal defenses, Ms. Johnson was evicted. Relying on erroneous instructions from the state court judge, Ms. Johnson filed this federal action seeking a declaratory action vacating the eviction among other relief. Ms. Johnson argues that her eviction violated the ADA, the Rehabilitation Act, the Fair Housing Act, and several state laws; she later added retaliation claims based on HASB's failure to provide her a positive tenant reference. Several months ago, the Court of Appeals of Indiana vacated Ms. Johnson's eviction, finding the lower court judge erred by disallowing Ms. Johnson's federal defenses.

Rather than inserting itself in the already-advanced state litigation, the Court finds it is appropriate to stay the pendent federal litigation under the doctrine of *Colorado River* abstention. Such a stay is justified by the significant progress of the state case, the preference to avoid piecemeal litigation, and the vexatious nature of the instant action. In the event the state court is not able to fully resolve Ms. Johnson's claims on final judgment, the Court will lift the stay and consider the merits of Ms. Johnson's claims.

### A. Facts

Ms. Johnson and her children previously resided at a house on Solomon Avenue in South Bend, which she rented from HASB. Ms. Johnson and her children began to experience health difficulties related to a mold problem in the Solomon Ave. house. Sometime in 2021, Ms. Johnson requested an inspection of her house by another city agency, which instructed HASB that the mold presented a habitability problem and would need to be removed. Ms. Johnson informed HASB that while she was willing to move temporarily for the purpose of mold removal, she wanted to move back to the Solomon Ave. house after repairs were complete. Though the record is scant, it appears Ms. Johnson and HASB could not come to an agreement about where Ms. Johnson and her children would live during and after the mold removal. HASB proposed two other housing placements, which Ms. Johnson rejected because they lacked the cultural richness and convenience of her current placement.[1] In January 2022, Ms. Johnson filed

---

[1] In Ms. Johnson's first telling, she did not want to move because the alternatives lack the things she loves about the Solomon Ave. house, which has a yard and is close to neighbors, dining, restaurants, shopping. *Johnson v. South Bend Hous. Auth.*, 3:22-cv-85, DE 1 at 2. At the state court evidentiary hearing, Ms. Johnson significantly changed her tune and argued the two transfer options had bed bugs and rats and were "uninhabitable." (DE 20-3 at 6.) In this action, Ms. Johnson argues only that the other suggested placements lacked the "culturally integrated neighborhood of Solomon Ave., with good access to schools, shopping, entertainment and social life with friends" and does not allege any vermin rendered the other options uninhabitable. (DE 1 at 8.)

a federal action in this Court pro se, complaining that HASB would not fix the mold and had said she would need to move against her wishes. That action was promptly dismissed for lack of subject matter jurisdiction, as no diversity was present and it was not evident that Ms. Johnson had any federal claims.

On April 8, 2022, the Housing Authority of South Bend filed an eviction action against Ms. Johnson, seeking possession of her unit and ten thousand dollars. The eviction appeared to be based on Ms. Johnson's refusal to move.[2] On June 24, 2022, Ms. Johnson represented herself at an evidentiary hearing for the eviction proceeding. At the evidentiary hearing, Ms. Johnson attempted to argue that HASB had violated federal law and therefore it, not she, was in violation of the lease. "Attempted to argue" is the correct wording; the overseeing judge was mistaken about his authority to hear federal defenses in an eviction proceeding and did not allow Ms. Johnson to present any evidence. The judge repeatedly and erroneously informed Ms. Johnson that her defenses were for adjudication in federal court, and she would need to file a separate action in federal court to obtain relief. At the close of the evidentiary hearing, the judge ordered Ms. Johnson's eviction and issued a notice with an August 1 date of eviction. On August 1, 2022, Ms. Johnson and her family were evicted from the Solomon Ave. house.

The same day, Ms. Johnson took the state court judge at his word and filed the present action, which is in large part based on the same federal defenses the eviction judge refused to hear. Ms. Johnson claims that HASB's actions violated the ADA, Rehabilitation Act, Fair Housing Act, and several Indiana statutes, as well as her equal protection and due process rights

---

[2] Ms. Johnson does not provide the Court with a wealth of detail, and neither party attached the transcript of the evidentiary hearing. The Court of Appeals' opinion clarifies: "HASB explained that it cannot permit a tenant to remain in a unit that has been alleged to be uninhabitable and that Johnson refused to vacate. Therefore, HASB felt that their only option, in order to comply with federal regulations and the lease terms, was to terminate Johnson's lease." 204 N.E. 3d at 942.

under the Fourteenth Amendment (hereafter, "the original complaint"). (DE 1.)[3] She asks the Court to enter a declaratory judgment, issue an injunction, and award any permissible damages. On September 7, 2022, Ms. Johnson filed a supplemental complaint arguing that HASB had impermissibly retaliated against her by refusing to provide a positive landlord review to her potential new landlord upon request. (DE 13.) Her supplemental complaint seeks identical relief to the original complaint. Defendants timely moved to dismiss each complaint under Rules 12(b)(1) and 12(b)(6) (DE 17; 19), and these motions are now ripe for deciding.

While those motions were pending, the Indiana Court of Appeals reversed the state court opinions ordering Ms. Johnson's eviction and the related entry of damages against her. *See Johnson v. Hous. Auth. of S. Bend*, 204 N.E. 3d 940 (Ind. Ct. App. Feb. 14, 2023) (reversing eviction); *Johnson v. Hous. Auth. of S. Bend*, No. 22A-EV-2459, 2023 WL 1980809 (Ind. Ct. App. Feb. 14, 2023) (reversing entry of damages). The Court of Appeals found the lower court judge erred in not allowing Ms. Johnson to present evidence of her federal defenses and remanded for further proceedings. 204 N.E. 3d at 946. On February 26, 2023, Ms. Johnson filed a motion for a second supplementary complaint again challenging the now-vacated eviction, which HASB opposes. (DE 27; 28.)

### B. Legal Standard

Abstention arguments under both *Rooker-Feldman* and *Colorado River* implicate a court's jurisdiction. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 475 (7th Cir.

---

[3] Ms. Johnson sues on behalf of herself and her children and has named two employees of HASB as defendants in her action. The Court refers only to Ms. Johnson and HASB both for ease of comprehension and because Ms. Johnson has not pled and allegations supporting the liability of the employees. This decision applies with equal force to all named parties.

2020); *Salem v. Larkin*, --- F.Supp.3d ---, No. 20-CV06531, 2022 WL 17176496, at *3 (N.D. Ill. Nov. 23, 2022). Arguments for abstention "do not fit neatly into Rule 12(b)(1) or Rule 12(b)(6)." *Whole Woman's Health All. v. Hill*, 377 F. Supp. 3d 924, 930 (S.D. Ind. 2019). "Such arguments do not deny the existence of subject-matter jurisdiction; they presuppose it." *Id*. However, "when such a motion "asks the Court to decline jurisdiction, as defendants' motion does, it fits more comfortably under Rule 12(b)(1)." *Nadzhafaliyev v. Hardy*, 403 F. Supp. 3d 663, 667 (N.D. Ill. 2019). "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Because this case challenges the factual circumstances of jurisdiction rather than solely the pleading of jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)

### C. Discussion

Though the parties briefed whether the Court lacked jurisdiction under *Rooker-Feldman*, that doctrine no longer applies because the eviction has been vacated. HASB's secondary argument, that *Colorado River* abstention is appropriate under the circumstances, is persuasive, and the Court now institutes a stay of the federal action pending disposition of the state action.

> **(1) Rooker-Feldman *does not apply because Ms. Johnson is no longer a state court loser.***

*Rooker-Feldman* does not apply to this action because the first prong of the test is not met; Ms. Johnson is no longer seeking to set aside a state court judgment. An analysis of whether a federal court should abstain from jurisdiction over a case under *Rooker-Feldman* proceeds in two steps: first, a court asks "whether the federal plaintiff seeks to set aside a state court judgment," and if so, the court determines "whether the plaintiff [had] a reasonable opportunity to raise the issue in state court proceedings." *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004). The Court does not reach the second issue because the Indiana Court of Appeals' vacating of the offending judgment renders *Rooker-Feldman* inapplicable.

In Defendants' motion to dismiss the original complaint, they strenuously argue that *Rooker-Feldman* abstention is appropriate because lower federal courts lack jurisdiction to review the decisions of state courts in civil cases. (DE 20 at 4.) This is a correct statement of the law, but it is not applicable to this case due to the changed posture of the parallel state case. The *Rooker-Feldman* doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). At the time of the original complaint, Ms. Johnson's central prayer for relief here was precluded by *Rooker-Feldman*: she asked this Court to enter declaratory judgment and issue an injunction essentially overturning her state court eviction and restoring her to her previous residence.[4] Granting such a request would obviously constitute an improper review of state court decisions

---

[4] Though Ms. Johnson also mentioned the word "damages" in the original complaint's prayer for relief, she did not mention, much less specifically plead, any basis for damages. Instead, her complaint centers on her desire to be reinstated at her prior residence, leading the Court to believe the reversal of her prior eviction was the primary goal of her federal suit.

by the federal district court. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999) (contesting an eviction judgment as itself a civil rights violation seeks review of a state court judgment); *Fincher v. S. Bend Hous. Auth.*, 612 F. Supp. 2d 1009, 1012 (N.D. Ind. 2009) (*Rooker-Feldman* prevented federal review of eviction by HASB). However, the Indiana Court of Appeals' subsequent reversal of both the eviction and denial of damages means that Ms. Johnson is no longer a "state-court loser" seeking review of a state court judgment. *See Bergquist v. Mann Bracken*, LLP, 592 F.3d 816, 818 (7th Cir. 2010) (*Rooker-Feldman* does not apply when the state judiciary vacated the offending decision); *Richardson v. Koch L. Firm, P.C.*, 768 F.3d 732, 735 (7th Cir. 2014) (same). Therefore, the Court must decide whether some other rationale justifies abstention or decide the motion to dismiss on the merits.

### *(2) A stay of the present litigation is appropriate under* Colorado River.

Though *Rooker-Feldman* is inapplicable, the Court nevertheless finds abstention is appropriate under the *Colorado River* doctrine. In *Colorado River*, the Supreme Court held a federal court may abstain and stay or dismiss a suit in deference to parallel state proceedings in exceptional circumstances for reasons of wise judicial administration. *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 818, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). The Court finds the duplicative nature of the litigation, the risk of conflicting rulings, and the interest in conserving judicial resources justifies this Court's abstention from this action. Therefore, the Court will stay proceedings in the above-captioned case pending the resolution of the state litigation.

The Seventh Circuit employs a two-step analysis under *Colorado River*. First, the court asks whether the concurrent state and federal actions are actually parallel; if so, the second

question is whether *Colorado River*'s exceptional circumstances exist. *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020). In considering whether exceptional circumstances exist, the court may consider (1) whether the state has assumed jurisdiction over any private property in issue; (2) the inconvenience of the federal forum; (3) the desirability of avoiding "piecemeal" proceedings; (4) the order in which jurisdiction was obtained; (5) the source of governing law; (6) the adequacy of the state-court action; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) whether the federal action is vexatious or contrived. *Id*. The Court need not mechanically weigh each factor or tally pros and cons, but instead may make a practical judgment informed by the factors most pertinent to the case. *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 527 (7th Cir. 2021).

    The Court finds several factors support abstention. First, the allegations in Ms. Johnson's original complaint are clearly parallel to those at issue in the state proceedings. "Two suits are considered parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum. Formal symmetry is unnecessary, as long as there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *DePuy Synthes Sales*, 953 F.3d at 477–78. Here, Ms. Johnson's claims consist entirely of defenses she would have brought in the state eviction action had she been allowed. Only her supplemental complaints differ at all, and they, too, require the litigation of substantially the same issues: that Ms. Johnson was wrongfully evicted and HASB discriminated against her on the basis of her disability. Now that the eviction action has been remanded, the

lower court will consider her federal defenses and may evaluate any claim for damages she might have.[5] The actions border on identical; therefore, they are parallel.

Therefore, the Court may properly consider whether *Colorado River*'s exceptional circumstances are met and finds that they are, primarily due to the advanced progress of the other case, the competency of the state court to handle all claims, the potential for inconsistent rulings, and the now vexatious nature of the federal action.

The state court action was brought first and has proceeded substantially, while this action has always been secondary to the state action and is in its infancy. The Seventh Circuit previously found the relative progress of the state proceeding favored imposition of a *Colorado River* stay where the appellate court had reversed an offending decision and remanded for consistent proceedings, as is the case here. *See Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988). The state cases already have an established evidentiary record and a guiding appellate opinion, two factors that strengthen the likelihood that the claims will be quickly resolved. Further, the Court of Appeals remanded Ms. Johnson's claim for state court proceedings consistent with its order, which previously included speedy evidentiary hearings. In a case such as this one, where the factual allegations are meager, it is advantageous for Ms. Johnson's claims to proceed in a venue that affords speedy adjudication of both law and factual disputes—here, the state courts.[6] It would seem odd for the federal court to swoop in and afford

---

[5] Ms. Johnson's remanded case will be handed by the small claims eviction court where it first arose. Under the Indiana small claims rules, defendants may bring counterclaims in small claims court, so long as the dollar value of the counterclaim is less than the court's $10,000 jurisdictional limit. If the value of the counterclaims exceeds $10,000, the counterclaims or the entire case may be transferred to another state court or division upon a motion to transfer. *Indiana Small Claims Manual (2023)*, p. 19–20 (revised January 13, 2023). There is thus no barrier to Ms. Johnson's counterclaims being heard in the pending state matter.

[6] Because this Court does not hold evidentiary hearings routinely, the first time factual disputes can be resolved is often at trial. A recent report revealed the median time from filing to trial disposition of civil cases in the Northern District of Indiana exceeded 48 months. *See* Table C-5, U.S. District Courts, Civil Statistical Tables for the Federal Judiciary (Dec. 31, 2022).

(or deny) relief already well on its way from a competent court. Therefore, the timing and progress of the state and federal actions favor abstention.

Further, allowing both the state and federal actions to proceed in parallel tracks wastes the limited resources of the judiciary and creates the potential for inconsistent rulings, eroding the prestige of both courts. The waste and potential for confusion are immediately evident. "When two courts are given the task to oversee similar proceedings such as pre-trial motions, discovery matters, and the consideration of similar issues, evidence, and witnesses, it is effectively duplicating the amount of judicial resources required to reach a solution. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1022 (7th Cir. 2014). And inconsistent rulings present a fairly significant risk. "While the doctrine of res judicata largely obviates the risk of conflicting final dispositions on the merits, a significant risk of conflict attends interlocutory rulings that are not ordinarily entitled to preclusive effect. To take a fairly pedestrian example, the state and federal courts may issue contradictory orders on discovery matters." *Lumen Const., Inc. v. Brant Const. Co., Inc.*, 780 F.2d 691, 694 n. 2 (7th Cir.1985). "Inconsistent rulings could jeopardize the appearance and actuality of justice." *Interstate Material Corp.*, 847 F.2d at 1290. The litigants, for their part, will have to have almost laser-like mental acuity; imagine for a moment recalling which exhibits each court has admitted if some fine distinctions were involved. But the alternative, in which both courts attempt to issue similar decisions, is not better. Litigants may seek to take advantage of the cacophony by advancing the proceedings in the more sympathetic court on an artificially expedited timeline and then assert those rulings in the slower court. "[T]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 567, 103 S. Ct. 3201, 77 L. Ed. 2d 837

(1983). It has the potential to be unfair and undignified, and it ultimately invites the question of why the second court is proceeding at all if it is only to parrot the decisions of the speedier or friendlier court. Neither scenario represents a good use of the judiciary's time and resources.

One factor bears mentioning: the adequacy of the state court action. Ms. Johnson came before this Court because the state court refused to properly hear her federal defenses. Of course, it is important any litigant is afforded a venue to assert a meritorious claim, and the *Colorado River* analysis may well have differed had the Court of Appeals affirmed the lower court's decision. But the Court is reassured by the Indiana Court of Appeals speedy and correct reversal, which recognizes the duty of state courts to enforce federal law. *See* 204 N.E. 3d at 947*; see also Haywood v. Drown*, 556 U.S. 729, 735, 129 S. Ct. 2108, 173 L. Ed. 2d 920 (2009) (explaining the Supremacy Clause and federal jurisdiction). Ms. Johnson's claims can be heard in state court, and no further barrier exists to her asserting them there. And, as the Seventh Circuit has found, a prior adverse ruling against a party does not render a state court action inadequate where the courts have concurrent jurisdiction. *DePuy Synthes Sales*, 953 F.3d at 479. The Court is therefore reassured no barrier will exist to Ms. Johnson's action in state court, and this factor does not weigh against abstention under *Colorado River*. Additionally, if some erroneous refusal to apply federal law persisted, this Court can lift the stay upon final judgment and adjudicate the matter, further guarding against any concern that the state court will prove inadequate.

Which brings the Court to a final persuasive factor: whether the present litigation is vexatious or contrived. The Court finds this factor weighs somewhat in favor of a stay or dismissal. It bears repeating that the instant action only arose because the state action was not going Ms. Johnson's way. If the judge at the evidentiary hearing had allowed her to present evidence on her defenses, this action may not exist at all. It would be unfair to label Ms.

Johnson's federal action as taken in bad faith; she sought only to make a federal argument, and she should have been allowed to do so in the state court action. Still, the filing of the action was designed to circumvent the state court decision, an improper purpose. *Cf. Depuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F. Supp. 3d 690, 711 (S.D. Ind. 2019) (finding an action vexatious where the suit was "an effort by [plaintiff] to circumvent the California court's denial of its motion to compel arbitration"), *aff'd*, 953 F.3d 469 (7th Cir. 2020). In any event, litigation may be vexatious without impugning Ms. Johnson's motives. *See Freed v. Friedman*, 215 F. Supp. 3d 642, 657 (N.D. Ill. 2016) (finding federal action vexatious where it was identical to the state action). "[T]his factor can weigh in favor of abstention when the claims and parties in the federal suit could have been included in the original state court proceeding." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d at 1024. The answer is evident: Ms. Johnson wanted to bring these arguments in the original state court proceeding, would have been able to do so under any normal adjudication, and now is able to bring them. This justifies abstention.

Because abstention is warranted, the Court must determine whether staying or dismissing the action is most appropriate. "When abstention is appropriate under *Colorado River*, our circuit has a strong preference for a stay rather than a dismissal of the federal suit… A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 503 n.9 (7th Cir. 2011). The statute of limitations is of particular concern given the type of federal claims filed. *See Cordova v. Univ. of Notre Dame Du Lac*, 936 F. Supp. 2d 1003, 1011–12 (N.D. Ind. 2013) (ADA and Rehabilitation Act claims subject to Indiana's two-year statute of limitations); *Cnty. of Cook, Illinois v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 995 (N.D. Ill. 2018) (FHA contains two-year statute of limitations). This

would not be an equitable result, and it would undermine many considerations that weighed in favor of issuing the stay in the first place. *See Selmon v. Portsmouth Drive Condo. Ass'n*, 89 F.3d 406, 410 (7th Cir. 1996) (stays are preferred so that "the federal forum remain available to the plaintiff should the state court litigation prove not to be an adequate vehicle" for resolving the case). Given these concerns and the Seventh Circuit's general preference for a stay, the Court will stay this action.

### D. Conclusion

For the aforementioned reasons, Defendants' motions (DE 17; 19) are GRANTED. Pursuant to the *Colorado River* doctrine, the Court hereby STAYS this action pending resolution of the state court litigation. When the state court litigation terminates, any party may move this court to lift the stay and proceed with this action. If this action is not dismissed upon lifting the stay due to res judicata, it is the Court's preference that Ms. Johnson replead her claims into a single, operative amended complaint in order to reduce confusion and assist in the economic and speedy disposition of the entire case. The Court further DENIES Ms. Johnson's motion to file a second supplementary complaint (DE 27) as it would not advance the efficient disposition of the action given the imposition of the stay and the multiple complaints already present in this action. *See Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022).

SO ORDERED.

ENTERED: April 26, 2023

                                                    /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court